**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
056 DELI & GROCERY CORP.,
and SANDRA PICHARDO MAJIAS
*as President/CEO 056 Deli & Grocery Corp.*

                        Plaintiffs,              <u>**ORDER**</u>

               -against-                **23-CV-5557 (JPC) (JW)**

UNITED STATES OF AMERICA and THE
UNITED STATES DEPARTMENT OF
AGRICULTURE, FOOD AND
NUTRITION SERVICE

                        Defendants.
------------------------------------------------------------------X

**JENNIFER E. WILLIS, United States Magistrate Judge:**

Defendants United States of America and the United States Department of Agriculture, Food and Nutrition Service ("FNS," together with the United States of America "Defendants") revoked the Supplemental Nutrition Assistance Program ("SNAP") benefits from Plaintiff 056 Deli & Grocery Corp. ("056 Deli" together with Sandra Pichardo Majias "Plaintiffs"). Dkt. No. 1. In response to Plaintiffs' challenge to this determination, Defendants produced a 941-page certified administrative record containing the information that FNS relied upon in reaching its determination that Plaintiffs engaged in trafficking of SNAP benefits. Dkt. Nos. 42–43. Plaintiffs subsequently requested additional discovery. Dkt. No. 36. Plaintiffs' request for additional discovery is GRANTED in-part and DENIED in-part.

## I. BACKGROUND

Authorized SNAP retailers are subject to regulatory requirements. See 7 C.F.R. § 278. If a retailor violates those requirements, FNS is empowered to permanently disqualify that retailer from the program. See 7 C.F.R. § 278.6.

In the instant case, FNS's electric alert system flagged patterns of electronic benefit transfer ("EBT") transactions at 056 Deli as consistent with possible EBT trafficking violations. Dkt. No. 45. FNS subsequently investigated, including a comparative analysis of the store's transactions, and concluded that there was unusual behavior sufficient to justify removing 056 Deli from the SNAP program. Dkt. No. 44.

Defendants produced the 941-page certified administrative record that FNS relied upon in reaching its determination that Plaintiffs engaged in EBT trafficking. Dkt. Nos. 42–43.

On June 27, 2024, Plaintiffs filed a letter motion for additional discovery. Dkt. No. 36. Pursuant to Court Order both Parties submitted letters on July 11, 2024, regarding the appropriateness of additional discovery. Dkt. Nos. 36, 44.

## II. LEGAL STANDARDS

At step one of a judicial review of an FNS decision to disqualify a SNAP retailer, the SNAP retailer must disprove each cited instance of SNAP trafficking. E. Vill. New Deli Corp. v. United States, No. 20-CV-7356 (PAE), 2021 WL 5507048 at *5 (S.D.N.Y. Nov. 23, 2021). Therefore, any additionally requested discovery must be germane to this issue. See id.

"Courts regularly grant summary judgment in SNAP cases without allowing for additional discovery."[1] First on First Deli v. United States, No. 21-CV-6965 (ALC) (KHP), 2022 WL 522427, at *2 (S.D.N.Y. Feb. 22, 2022) (citing Loma Deli Grocery Corp. v. United States, 2021 WL 4135216, at *11 (S.D.N.Y. Sept. 10, 2021) (collecting cases)). Additional discovery will only be allowed if it will be germane to the party and if it is neither cumulative nor speculative. Alphonse Hotel Corp. v. Tran, 828 F.3d 146, 151 (2d Cir. 2016) (citing Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994)). A bare assertion that the "evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient." Id.

Lastly, the Second Circuit has held that the request for additional discovery cannot be merely speculative. In re Dana Corp., 574 F.3d 129, 148–49 (2d Cir. 2009).

### III.  DISCUSSION

Plaintiffs' initial requests for additional discovery included the following categories:

1. Varied Data Used for Charging Letter.
2. Plaintiffs' SNAP Retailer File.
3. Plaintiffs' Transaction Data.
4. Comparative Stores Data.
5. Detailed Household Data.
6. Computational Formulas.
7. Final Agency Decisions.
8. Complete Review Records
9. Data from the ALERT system.
10. The depositions of several FNS employees.

---

[1] While this case is not at the summary judgment stage, the Court looks to these cases for guidance on the allowance of additional discovery not included in the administrative record.

Dkt. No. 36. In their brief in support, Plaintiff supplements this list by also asking for "investigative reports concerning the Plaintiffs, as well as statistical and investigative case studies on which the FNS's decision was predicated, and any internal agency documents and training materials that are relevant to this matter." Dkt. No. 45 at 8.

Plaintiffs' arguments for the above-listed discovery contain a single case citation which supports only the request for household data. Dkt. No. 45 at 8. The Court addresses each of Plaintiffs' discovery requests below.

### A. **Plaintiffs' request for household data**

Plaintiffs are seeking the "[f]ull transaction histories comprising all purchase and contact information for every household mentioned in the Charging Letter from January 2021 through July 2022." Dkt. No 36. Plaintiffs assert that they should have access to details related to the households specified in the charging letter because it is pertinent information that formed the foundation for FNS's original disqualification decision. Dkt. No. 45 at 8. Plaintiffs argue they should be permitted to seek the household data from New York State to aid their defense. Id. at 8–9 (citing First on First Deli, 2022 WL 525705 at *3. Plaintiffs also seek to depose several SNAP participants whose information may be found after obtaining the household data. Dkt. No. 36.

Defendants argue that Plaintiffs fail to explain how all EBT transactions of households will help them meet their burden of showing EBT trafficking did not occur. Dkt. No. 44. Moreover, Defendants note that the relevant period for the

4

agency's final decision was "February 2022 through July 2022," and seeking household information outside of this period cannot aid Plaintiffs. Id. (citing Tikabo v. United States, No. CV H-16-2197, 2017 WL 5075275, at *7 (S.D. Tex. Aug. 21, 2017)

Courts in this District have determined that because household identification information is housed by New York State, and not FNS, plaintiffs may be permitted 45 days to subpoena documents from New York State. See First on First Deli, 2022 WL 525705 at *3.

The Court finds Plaintiffs request for the "full transaction history… for every household mentioned in the Charging Letter from January 2021 through July 2022" to be vastly overbroad. Plaintiffs provide no reasoning as to how transactions not at the store in question are relevant to this case. However, similar to First on First Deli, the Court does believe the Plaintiffs should be permitted to seek the identity of potential witnesses using household data relevant to this case. See First on First Deli, 2022 WL 525705 at *3. Therefore, Plaintiffs are permitted 45 days to subpoena New York State for household identification and transaction details from February 2022 through July 2022 and only those stemming from 056 Deli & Grocery Corp. The sought information shall only be related to households specified in the charging letter. Should Plaintiffs seek and receive this information, they may make a separate application to the Court for leave to conduct depositions.

B. **Plaintiffs request for EBT transaction data of Plaintiffs' store and of the comparator stores utilized by FNS**

Requests three and four seek "[a]ll EBT/SNAP transaction data for the Plaintiffs since they started accepting SNAP benefits" and "for all stores which served

5

as a comparison in the Defendant's Evaluation of the Charging Letter as well as the Plaintiffs' response." Dkt. No 36. Plaintiffs cite no caselaw or individualized arguments that would guide this Court to decide they are entitled to such discovery.[2] Instead, Plaintiffs merely state that these requests stem "from concerns regarding the reliability and specificity of the methods used by these witnesses to conclude that trafficking indeed occurred." Dkt. No. 45 at 8–9.

Defendants contend that Plaintiffs cannot engage in a mere "fishing expedition based on bare speculation that additional data might reveal something beneficial." Dkt. No. 44 (citing Loma Deli Grocery Corp., 2021 WL 4135216, at *12). Defendants also again contend that Plaintiffs have failed to show how this information will help them meet their burden of disproving the EBT trafficking charges. Id.

Here, Plaintiffs request all data concerning their own EBT transactions and those of comparator stores utilized by FNS but fail to elaborate why this will help them meet their burden of showing that the agency's action was invalid. Moreover, the sole case mentioned in Plaintiffs' letter recognized that courts have concluded that data from other stores and outside of the relevant time range will not help a plaintiff meet their burden of proving EBT trafficking did not take place. See Loma Deli Grocery Corp., 2021 WL 4135216 at *12 (citing Tikabo, 2017 WL 5075275, at *7.

---

[2] To avoid re-stating this sentence *ad nauseam*, the Court notes that Plaintiffs do not provide caselaw or individualized arguments in support of any of their remining discovery requests.

Therefore, the discovery request for data concerning all Plaintiffs' EBT transactions and that of the comparator stores utilized by FNS is **DENIED**.

### C. Plaintiffs' requests for their retailer file, data used for the charging letter, and all materials used to disqualify Plaintiffs.

Plaintiffs' first, second, and eighth requests seek unredacted copies of all data that "fed into the development of the Charging Letter," "[e]very part of the Plaintiffs' SNAP retailer file," and all other materials that led to them being disqualified from SNAP. Dkt. No. 36.

Defendants assert that all the evidence sought in the above-mentioned requests is already included in the certified administrative record. Dkt. No. 44 (citing Dkt. No. 43 (the Administrative Record)). Defendants therefore contend any requests to reproduce this information would be cumulative. Id.

The Court agrees with Defendants that the certified administrative record in this case seemingly contains the requested categories of discovery sought by Plaintiffs. See Dkt. No. 43. In the event it does not, Plaintiffs' requests are too broad to determine what specific discovery sought in requests one, two, and eight is not included in certified administrative record. Thus, Plaintiffs first, second, and eighth requests for categories of discovery are **DENIED**.

### D. Plaintiffs' request for data from the ALERT system, computational formulas, internal agency documents, training materials, and investigative reports used by FNS

Plaintiffs' sixth and ninth requests for discovery include "[c]opies of any software, algorithm, or computation used to generate appendices fostered in the

7

Charging Letter" and data from the ALERT system. Dkt. No. 36. Related to these requests, Plaintiffs' brief contends that discovery should include internal agency documents, training materials, and statistical and investigative case studies on which the FNS predicated its decision.[3] Dkt. No. 45 at 8.

Defendants make two arguments against these categories of discovery. First, Defendants argue that a trafficking determination is not made by the ALERT system, as it is "a detection tool." Dkt. No. 44. Instead, Defendants explain that decisions to disqualify a store are made by a Program Specialist who investigates the store. Id. Defendants then assert that the Programs Specialist's analysis of this store is contained in the administrative record, providing Plaintiffs with all they need to understand the disqualification. Id.

Second, Defendants argue that the reliability of the ALERT system is not relevant to whether Plaintiffs trafficked EBT benefits. Dkt. No. 44 (citing Bros. Grocery & Deli Corp. v. United States, No. 20 Civ. 06961 (JCM), 2021 WL 4443723, at *8 (S.D.N.Y. Sept. 28, 2021).

Plaintiffs' requests seek to impermissibly attack the reliability of the ALERT system and FNS's other internal procedures. The Second Circuit has held that "uncovering the FNS's internal procedures and decision-making is simply not relevant to meeting [Plaintiff's] burden." Timsina v. United States, 835 F. App'x 633,

---

[3] The Court notes that Defendants did not have an opportunity to directly rebut these requests as they were not in Plaintiffs' initial requests and Defendants filed their brief before Plaintiffs.

635 (2d Cir. 2020); see also Loma Deli Grocery Corp., 2021 WL 4135216 at *8, (concluding the reliability of the alert system was not relevant or germane to plaintiff burden at summary judgement).

Plaintiffs' sixth and ninth requests, along with the late request for internal agency documents, training materials, and investigative reports used by FNS, are therefore **DENIED**.

### E. Plaintiffs' request for all final agency decisions

Plaintiffs' seventh request is for "[e]very Final Agency Decision concerning permanent disqualifications or penalties in lieu of disqualification of SNAP retailers from January 2019, until compliance with this discovery request."

Defendants do not address this request in their opposition brief.

Neither Party provides the Court with an argument for why this discovery should be produced or precluded. However, the precedent cited in this Order makes clear that a plaintiff is typically entitled to discovery that would aid them in their burden of disproving each alleged instance of EBT trafficking. See supra Section II at 2–3. The Court cannot conclude, based on its own logic and in the absence of argument, that every agency decision to disqualify or penalize a SNAP retailer would help Plaintiffs prove each cited instance of EBT trafficking against them was invalid. Thus, Plaintiffs' seventh request is **DENIED**.

F. **Plaintiffs request for permission to depose FNS employees**

Lastly, Plaintiffs seek to depose FNS employees about FNS's investigative procedures. Dkt. No. 36. Defendants argue that this is not germane to meeting the Plaintiffs' burden. Dkt. No. 44.

The Second Circuit has denied a plaintiff's requests to depose FNS employees regarding FNS's investigative protocol for detecting potential SNAP violations. Timsina, 835 F. App'x at 634–35. The Court reasoned it "would not have been germane to the [plaintiffs] opposition to the government's motion for summary judgment." Id. "The [plaintiffs'] burden in overcoming the government's motion was to raise a genuine issue of material fact regarding whether it had engaged in SNAP benefits trafficking." Id. at 635; see also Loma Deli Grocery Corp., 2021 WL 4135216 at *11 ("the testimony of [FNS] officials and employees who analyzed Plaintiffs' data is simply not relevant to whether Plaintiffs trafficked in EBT benefits because noncompliance or unreliable investigative methods by [FNS] representatives would neither fulfill nor excuse Plaintiffs' burden of proof.").

Thus, the requests for depositions directed toward uncovering the FNS's internal procedures is not relevant to meeting Plaintiffs' burden and the discovery request are **DENIED**.

## CONCLUSION

For the reasons stated above, Plaintiffs' request for household data to the extent that Plaintiffs may subpoena New York State is **GRANTED** and Plaintiffs' remaining discovery requests are all **DENIED**.

SO ORDERED.

DATED:   New York, New York
         January 7, 2025

*Jennifer E. Willis*
JENNIFER E. WILLIS
United States Magistrate Judge