UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
056 DELI & GROCERY CORP., et al.,

                                        Plaintiff,                    **ORDER**

                        -against-                                     **23-CV-5557 (JW)**

UNITED STATES OF AMERICA, et al.

                                        Defendant.
------------------------------------------------------------------

**JENNIFER E. WILLIS, UNITED STATES MAGISTRATE JUDGE:**

On June 29, 2023, Plaintiffs 056 Deli & Grocery Corp. and Sandra Mejia Pichardo ("056 Deli" or "Plaintiffs") commenced this action seeking judicial review of the United States Department of Agriculture's Food and Nutrition Services ("FNS") final agency determination permanently denying 056 Deli from participating in the Supplemental Nutrition Assistance Program ("SNAP"). On May 15, 2025, the United States of America and FNS ("Defendants") moved for summary judgment to affirm FNS's decision and dismiss this action. Dkt. No. 55.

## I. BACKGROUND

The following facts are drawn from the Certified Administrative Record ("A.R.") and from the Parties' submissions in connection with the Motions and are not materially in dispute unless otherwise noted.

### A. 056 Deli's Approval as a SNAP Retailer

Sandra Mejia Pichardo owns and operates 056 Deli located in the Bronx, New York. Dkt. No. 62 at ¶ 1. In December 2020, Mejia Pichardo applied for authorization

to receive SNAP benefits at 056 Deli. Id. at ¶ 2. After she applied, FNS arranged for a store visit to 056 Deli wherein an FNS contractor documented the store size and available food items, recorded the layout of the public areas of the store, and photographed the store. Id. at ¶ 4, A.R. 85-142. FNS classified 056 Deli as a convenience store. Id. at ¶ 6. On March 10, 2021 FNS approved 056 Deli as an authorized SNAP retailer. Id. at ¶ 5.

### B. The EBT Trafficking Investigation

In September 2022, FNS opened an investigation into 056 Deli because of suspected Electronic Benefits Transfer ("EBT") trafficking based on patterns of transaction data from 056 Deli. Id. at ¶ 7. The review period for the investigation was February 2022 through July 2022. Id. at ¶ 9.

As part of the investigation, FNS sent a contractor to visit and observe 056 Deli on July 16, 2022. Id. FNS found that 056 Deli was a 900 square-foot convenience store with only one cash register, one optical scanner, no shopping carts or baskets, and that the five most expensive SNAP eligible items were priced between $6.49 and $35.99.[1] Id. at ¶ 10.

In addition to the in-person visit by the FNS contractor, FNS also analyzed 056 Deli's SNAP EBT data during the review period. Id. at ¶ 11. That data was then compared to EBT data from two comparator stores within a .40-mile radius during the same time period. Dkt. No. 62 at ¶ 29. At the conclusion of the investigation, FNS

---

[1] Plaintiffs Rule 56.1 Counterstatement denies these findings "to the extent that this description was used to infer wrongdoing." Dkt. No. 61 at 3. However, Plaintiff does not deny the factual observations about 056 Deli in paragraph 10.

determined 056 Deli trafficked SNAP benefits from February 2022 to July 2022 based on six categories of transactions characterized by FNS as suspicious.

The six categories that FNS flagged as suspicious are as follows[2]:

The first category consisted of data that suggested 056 Deli conducted a disproportionately large number of transactions ending in the same cent value. Id. at ¶12.  In support of that allegation, FNS analyzed 1,718 eligible transactions and found that 66.69% ended in 00 cents, 4.19% of the transactions ended in 25 cents, 13.1% ended in 50 cents, and 1.4% ended in 75 cents. Id. at ¶ 13-14.

The second category of suspicious transactions was repeated transactions with the same dollar value.  Id. at ¶ 15. Of the transactions analyzed during the review period, 302 transactions involved repeated dollar values of $65, $75, $80, $95, $99, $100, $129, $130, $132, and $195. Id. at ¶ 15-16.  056 Deli had 157 sets of transactions in the same dollar value whereas the comparator stores had two and eight of those transaction sets. Id. at ¶ 34, A.R. 721.

The third category was the existence of a high rate of multiple transactions from one or more households within a short timeframe. Id. at ¶ 17.  According to the data FNS analyzed, 056 Deli processed 125 sets of transactions within less than four minutes of the first transaction.  Id. at ¶ 18.  The comparator stores had zero and three of the short timeframe transactions during the review period. Id. at ¶ 35, A.R. 721.

---

[2] Plaintiffs, in their Rule 56.1 Counterstatement, deny the conclusion that the six categories of data are evidence of trafficking but do not deny that FNS flagged the categories as suspicious as asserted in paragraph 11 or that the data existed.

The fourth category FNS deemed suspicious was that 056 Deli processed multiple transactions from the account of a single household within short timeframes. Id. at ¶ 19. During the review period, 106 households participated in 193 transactions in this category, which totaled $49,090.90 in SNAP benefits, whereas one comparator store had five and the other had fifteen. Id. at ¶¶ 20, 36.

The fifth category was transactions that depleted a household's SNAP benefits within a short timeframe. Id. at ¶ 21. 056 Deli conducted 200 sets of transactions involving 94 households that depleted their benefits within a "short period of time." Id. at ¶ 22. The comparator stores had two and zero sets of similar data. Id. at ¶ 37.

The sixth category FNS highlighted is transactions that were large based on the observed characteristics of 056 Deli and recorded food stock. Id. at ¶ 23. Nationwide, during the review period, the average purchase amount for convenience stores in SNAP benefits was $10.35. Id. at ¶ 24. However, 056 Deli processed 1,117 transactions that were "higher than 85% of all convenience store purchases transactions nationwide," which FNS characterized as suspiciously large. Id. at ¶ 25. The comparator stores had one 106 and 193 suspiciously large transactions. Id. at ¶ 38. Moreover, the average transaction amount at 056 Deli was $33.65, while the average transaction amount at the comparator stores was $8.63 and $9.93. Id. at ¶ 31.

In addition to the six categories of EBT data FNS analyzed, FNS selected five households that participated in the transactions that were deemed suspicious at 056 Deli and analyzed their shopping patterns. Id. at ¶¶ 39-40. The analysis revealed

4

that those households also shopped at nearby stores and visited larger stores on the same day or close in time to suspicious transactions. Id.

### C. The Charge Letter

After concluding the investigation, FNS issued a Charge Letter, dated October 5, 2022, informing 056 Deli of the suspected trafficking of SNAP benefits during the review period. The Charge Letter warned that if the agency determined 056 Deli had committed the violations, the store would be permanently disqualified from SNAP and/or a Civil Monetary Penalty ("CMP") would issue. Id. at ¶¶ 42-44. The Charge Letter was sent to the mailing address 056 Deli provided on the SNAP application. A.R. 16, 730. However, 056 Deli denies receiving the Charge Letter and asserts the letter was not properly served. Dkt. No. 62 at ¶ 46 (Response). The Charge Letter notified 056 Deli that to request a CMP, it must meet the four criteria outlined in Section 278.6(i) of the SNAP regulations and provide the documentation required by the regulations within ten calendar days of the store's receipt of the Charge Letter. Id. at ¶ 45. 056 Deli did not respond to the Charge Letter within the required ten calendar days. Id. at ¶ 46.

### D. Permanent Disqualification from SNAP

On October 18, 2022 FNS issued a determination letter informing 056 Deli that it concluded 056 Deli committed the violations and a sanction of permanent disqualification from SNAP would be imposed. Id. at ¶ 46. The determination letter stated that FNS had not received a response to the Charge Letter and that Plaintiffs

5

were not eligible for a CMP because 056 Deli had not submitted evidence to show the store had established an effective compliance policy and program. Id. at ¶ 47.

The determination letter informed Plaintiffs of the right to appeal the determination and notified them that any appeal must be filed within ten calendar days. Id. at ¶ 48. On October 28, 2022 Defendants received Plaintiffs' request for administrative review through counsel along with a brief with supporting exhibits. Id. at ¶ 49. On November 2, 2022 FNS informed Plaintiffs that it had received the request and permitted Plaintiffs to submit any additional evidence within 21 days. Id. at ¶ 50. On November 23, 2022, Plaintiff submitted additional records consisting of (1) a letter from Plaintiffs' counsel; (2) a letter of support from the Bodega and Small Business Group; and (3) a petition signed by 87 people who Plaintiffs indicated were 056 Deli customers. Id. at ¶ 52.

On May 6, 2023 an Administrative Review Official ("ARO") affirmed the decision to permanently disqualify 056 Deli from SNAP. Id. at ¶ 53. The ARO concluded that Plaintiffs had failed to prove by a preponderance of the evidence that FNS's decision should be reversed. Id. at ¶ 55. The ARO affirmed that 056 Deli was not eligible for a CMP because Plaintiffs did not make the request or submit the required documentation within the ten-day period. A.R. 939.

## II.   PROCEDURAL HISTORY

On June 29, 2023 Plaintiffs filed the Complaint in the instant action seeking judicial review of the FNS decision permanently denying 056 Deli from participating in SNAP.   Dkt. No. 1. The Complaint alleges the Administrative Review by FNS

denied Plaintiffs due process and the sanction of permanent disqualification was arbitrary and capricious.  Id. at ¶¶ 6-8.  On December 22, 2023, Defendants filed an Answer.  Dkt. No. 16.  The Parties consented to this Court's jurisdiction on July 10, 2024. Dkt. No. 40.

On June 27, 2024, Plaintiffs filed a letter motion for discovery.  Dkt. No. 36. Defendants objected, arguing this case did not warrant any discovery outside of the administrative record. Dkt. No. 44. By Order dated January 7, 2025, this Court granted in part, denied in part Plaintiffs' discovery motion. Dkt. No. 48.  Pursuant to the Court's Order, Plaintiffs were permitted to serve subpoenas on New York State for household data only.  Id. at 11.

On May 15, 2025 Defendants filed a Motion for Summary Judgment asserting that there is no genuine dispute of material fact as to FNS's conclusion that trafficking occurred and the permanent disqualification of 056 Deli from SNAP was not arbitrary or capricious. Dkt. No. 55.  Defendants filed a Rule 56.1 statement, a Declaration from the Judicial Review Coordination for FNS, and a Memorandum of Law with the Motion.  Dkt. Nos. 56-58.  Plaintiffs filed an Opposition on July 14, 2025.  Dkt. No. 59.  With the Opposition Plaintiffs filed a Declaration of Yomary Pichardo Mejia (Exhibit A), a Declaration of Jody Burgos Pichardo (Exhibit B), a Declaration of Frank Marte (Exhibit C), a Declaration of Sandra Mejia Pichardo (Exhibit D), and a Memorandum Opinion and Order from 7-Eleven #22360 v. United States (Exhibit D). Dkt. No. 60.  Plaintiffs also filed a Rule 56.1 Counter Statement. Dkt. No. 62. Defendants filed a reply on August 8, 2025.  Dkt. No. 63.

7

### III.   LEGAL STANDARD

To prevail on a motion for summary judgment, the movant must "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The movant bears the burden of demonstrating the absence of a question of material fact.  In making this determination, the Court must view all facts "in the light most favorable" to the non-moving party.  Holcomb v. Iona Coll., 521 F.3d 130, 132 (2d Cir. 2008); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).  Rather, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record" to survive a motion for summary judgment. Fed. R. Civ. P. 56(c)(1)(A); see also Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).

"Only disputes over facts that might affect the outcome of the suit under the governing law" will preclude a grant of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether there are genuine issues of material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment

is sought." Johnson v. Killian, 680 F.3d 234, 236 (2d Cir. 2012) (quoting Terry v. Ashcroft, 336 F.3d 128, 137 (2d Cir. 2003)) (internal quotation marks omitted). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

## IV.   DISCUSSION

"Judicial review of a decision by the FNS disqualifying a firm from participation in SNAP as the result of a trafficking violation is a two-step process." Loma Deli Grocery Corp. v. United States, No. 20 Civ. 7236 (JPC), WL 4135216, at *5 (S.D.N.Y. Sept. 10, 2021) (citing Capellan v. United States, No. 17 Civ. 9342 (AT), 2020 WL 1047907, at *3 (S.D.N.Y. Mar. 4, 2020)).

First the court must conduct a *de novo* review to determine whether the trafficking violation actually occurred. Id. Step one requires the court to "reexamine the FNS's decision on a fresh record." Id. (quoting Ibrahim v. U.S. Through Dep't of Agric., 834 F.2d 52, 53 (2d Cir. 1987)). Plaintiffs, as the moving party, bear the burden of proving by a preponderance of the evidence that the agency's decision was invalid. See Arias v. United States, No. 13 Civ. 8542 (HBP), 2014 WL 5004409, at *6 (S.D.N.Y. Sept. 29, 2014) (collecting cases). To meet the burden, Plaintiffs must "demonstrate that 'each cited instance of trafficking' was invalid, as the FNS may permanently disqualify a participant even after just one instance of trafficking." Capellan, 2020 WL 1047907, at *3 (quoting SS Grocery Inc. v. U.S. Dep't of Agric.,

9

Food and Nutrition Serv., 340 F.Supp.3d 172, 180 (E.D.N.Y. 2018)).  *De novo* review does not require an actual trial. Loma, 2021 WL 4135216, at *5. "Instead, 'summary judgment has been held to be appropriate on *de novo* judicial review of a disqualification of a retail food store from participating in the SNAP Program if no genuine issue of material fact exists.'" Id. (internal citations omitted).

Second, if the court finds a violation occurred, the court must then "determine whether the sanction imposed was 'arbitrary or capricious.'" Id.  The determination as to whether the agency sanction was arbitrary or capricious is appropriately determined on a motion for summary judgment. Makey Deli Grocery Inc. v. United States, No. 11 Civ. 2098 (JLC), 873 F.Supp.2d 516, 521 (S.D.N.Y. June 4, 2021).  In making the determination, the agency's sanction decision shall be afforded substantial deference. Loma, 2021 WL 4135216, at *5.  Affording substantial deference requires that "if the agency has followed its guidelines…the reviewing court may not overturn the decision as arbitrary and capricious." Id. (quoting Makey, 873 F.Supp.2d at 520).

### A. The Determination that 056 Deli Engaged in Trafficking

FNS may consider in its investigation "facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transcript report under an EBT system, or the disqualification of a firm from WIC, along with other relevant evidence." Arias, 2014 WL 5004409, at *6 (internal quotation marks omitted) (citing 7 C.F.R. § 278.6(a)).  Courts have found that a convenience store committed SNAP trafficking based on the analysis of suspicious transaction data,

without eyewitness accounts of trafficking. See Nadia Int'l Mkt. v. United States, 689 Fed.Appx.30, 33 (2d Cir. 2017) ("[I]t was entirely proper for FNS to rely on transaction data alone in making its trafficking determination."); Muazb v. United States, No. 17 Civ. 6754 (DF), 2019 WL 1613433, at *9 (S.D.N.Y. Mar. 28, 2019).

Here, FNS analyzed EBT data from the review period, categorized transactions into six categories, visited 056 Deli to observe the inventory and layout, and compared 056 Deli's transaction data to two comparable stores.  FNS based its determination in large part on the six categories of data.  As such, the Court will address each in turn.

### 1.  Transactions in the Same Dollar and Cent Value

FNS cited a large number of transactions ending in the same cent value and the same dollar value as evidence of EBT trafficking for categories one and two.  The data revealed that 66.69% of eligible transactions analyzed by FNS ended in 00 cents and 157 transaction sets involved repeated dollar values between $65 and $132.  FNS observed during a site visit that the majority of the SNAP eligible items end with a "x9" cents value and the store did not round totals up or down at checkout. A.R. 931, 217. FNS also noted that "when certain dollar values are unusually repetitive, without reasonable explanation, they can be an indicator of trafficking." A.R. 932. Here, FNS found specifically the repetition of certain dollar amounts between $65 and $132 to be suspicious because the highest priced item 056 Deli carried, which was $35.99, was of limited stock. A.R. 932.

11

056 Deli did not deny the accuracy of the data reported by FNS regarding similar cent value amounts but argued that "repeated cent values may reflect common pricing practices, promotions, or customer purchasing habits rather than trafficking." Dkt. No. 62 at ¶ 12. Plaintiffs also did not deny the accuracy of the same dollar amount data but provided the explanation that either "[s]imilar or repeated transaction amounts can reflect set weekly purchases by loyal customers or culturally consistent food budgets" or the patterns could reflect specific budgets and splitting purchases over multiple days. Id. at ¶¶ 15, 16. Plaintiffs did not provide any proof of pricing practices that would lead to a high number of same cent or same dollar value data. Nor did Plaintiffs attach any affidavits of customers attesting to purchasing habits or splitting purchases.

Because "generalized, hypothetical explanations for the suspicious redemption activity and unsubstantiated conjecture are insufficient to create a genuine issue of material fact," Plaintiffs' explanations for categories one and two do not create a genuine issue of material fact. Loma, 2021 WL 4135216, at *9 (internal quotation marks and citations omitted).

### 2. Multiple Transactions in Short Timeframes

Categories three and four involve 056 Deli processing multiple transactions within a short timeframe. FNS's analysis of the data found that 056 Deli processed 125 sets of transactions within less than four minutes of the first transaction, while the comparator stores had zero and three of the short timeframe transactions during the review period. As an example, on August 16, 2022, there was a transaction for

12

$102.00 and only 25 seconds later a second household made a transaction for $68.50. Because of 056 Deli's characteristics (one cash register, one EBT point of sale, no carts or baskets, and limited inventory), and the fact that nonfood items must be separated out from EBT purchases, FNS found it highly unlikely the multiple rapid transactions found in the data involved the sale of SNAP eligible foods only. A.R. 933.

Additionally, during the review period, 106 households participated in 193 suspicious transactions wherein a single household conducted multiple transactions within a short timeframe, whereas the comparator stores had five and fifteen of those transaction sets. The data showed, for instance, that from April 1, 2022 to April 2, 2022 one household made three transactions in the amounts of $406.00, $389.00, and $389.50. A.R. 933-34.

Plaintiffs offer several possible explanations for the data. First, Plaintiffs assert that urban delis experience fast-paced foot traffic and quick repeat purchases, especially from families living nearby. Dkt. No. 62 at ¶ 18. Second, households often send different family members on multiple trips to avoid having to carry too much at once. Id. at ¶ 19. Third, single households completing multiple transactions within a short timeframe is consistent with a loyal customer base. Id. at ¶ 20. While Plaintiffs' explanations for the data are possible, Plaintiffs provide no evidence, either through data or anecdotal evidence to support their theories. Accordingly, this Court does not find any genuine issue of material fact as to categories three and four. See Duchimaza v. United States, 211 F.Supp.3d 421, 435 (D. Conn. Sept. 30, 2016) ("Factually

13

unsupported arguments do not create a genuine dispute about the legitimacy of the irregular EBT transactions.") (internal citations omitted).

### 3.  Transactions That Exhausted Benefits in a Short Timeframe

The fifth category of data FNS concluded gave rise to an inference of trafficking is households who depleted their EBT benefits within short timeframes. This data included 200 sets of transactions, involving 94 households who exhausted their benefits within a short period of time. The comparator stores had zero and one instance of a household spending the bulk of their monthly EBT benefits in a short timeframe at the stores.  A.R. 722.  In support of the conclusion that this is evidence of trafficking FNS stated "it is not unusual for violating retailers to conduct trafficking transactions in which a household spends the vast majority of its remaining allotment at one store in a short period of time or single transaction." A.R. 934.

Plaintiffs' response to the findings in the fifth category is that "this pattern is not suspicious in urban, high-density neighborhoods where families often use most of their monthly benefits early in the cycle to buy bulk staples" and "immediate household food needs." Id. at ¶¶ 21-22.

Courts in this District have repeatedly held that households spending the bulk of their EBT benefits within a short period of time is evidence of trafficking.  See e.g. SS Grocery, 340 F.Supp.3d at 182. (agreeing with FNS that household data showing quick depletion of benefits at SS Grocery in one or two transactions was evidence of trafficking.); Arias, 2014 WL 5004409, at *8 (finding it suspicious that many

customers at the deli broke from typical spending patterns of SNAP beneficiaries based on data provided by the USDA). This data is particularly irregular when contrasted with the comparator stores, which only had one instance of quick depletion of benefits, while 056 Deli had 200 instances during the review period. Additionally, because spending the entirety of a household's monthly EBT allotment in quick succession requires large purchase transactions, the limited inventory and lack of high price items at 056 Deli further undermines 056 Deli's explanation of the data. Therefore, category number five presents this no genuine dispute of fact as to whether trafficking occurred.

### 4. Excessively Large Transactions

Of the 1,117 transactions analyzed by FNS during the review period, the average transaction amount was $119.50. In Bronx County, the average purchase amount at convenience stores during the same timeframe was $11.93. A.R. 935. The unusually high transaction amounts included 47 transactions in the amount of $130.00, 40 transactions in the amount of $95.00, 34 transactions in the amount of $65.00, and 26 transactions in the amount of $100.00. A.R. 829-48. FNS concluded the average transaction amount, in addition to data that reflected transaction amounts as high as $611.00 to be improbable given that the most expensive item was a 20-pound bag of rice priced at $35.99 and inventory was limited. Id.

Plaintiffs denied that the large transaction data was indicative of trafficking and instead offered the explanation that large purchase transactions were due to loyal customers, family purchasing patterns, and availability of bulk items not

15

observed by FNS. Dkt. No. 62 at ¶ 25.  However, Plaintiffs provided no evidence to demonstrate to this Court that 056 Deli had a larger, hidden inventory, or affidavits or receipts showing family purchasing patterns.

Courts in this District have affirmed FNS's finding of trafficking based on a pattern of "relatively large" purchases conducted by a few households in short periods of time. Loma, 2021 WL 4135216, at *7.  When the record indicates that a store lacks "the high-priced inventory or checkout mechanisms needed to process sales at the speed and total dollar value indicated on the transaction reports," there is compelling evidence of trafficking. Nadia, 689 Fed.Appx. at 33.

### 5.  Selected Household Shopping Patterns

In addition to analyzing 056 Deli's transaction data, FNS analyzed the shopping patterns of selected households who shopped at 056 Deli.  FNS found that those households also shopped at nearby, larger stores on the same day or around the time of the suspicious transactions. One of the households spent $102.57 at a supermarket just a few hours before making a transaction of $107.05 at 056 Deli. A.R. 728. The Government relies on Timsina v. United States in support of the argument that this Court should find the household shopping pattern data bolster's FNS's conclusion of trafficking. 835 Fed. Appx. 633, 636 (2d Cir. 2020).  In Timsina, the Court found it suspicious that a household spent $159 at Costco, "a retail warehouse giant," approximately one hour before spending $411.00 at the convenience store at issue. Id.

In response, Plaintiffs argue that the fact that a customer visits multiple stores says nothing about the legitimacy of the transaction at 056 Deli because customers often shop at multiple stores for different items or sales.  Dkt. No. 62 at ¶ 40.

This Court agrees that the mere fact of a customer visiting multiple stores close in time does not prove trafficking.  Here, most of the data depicting the shopping patterns of the selected households is unremarkable. A.R. 724-28.  Many of the examples FNS included in the report show households spending less than $10 at nearby stores close in time to purchase transactions at 056 Deli. Id.  The strongest example of suspicious activity is a household spending $102.57 at a supermarket on the same day the household spent $107.05 at 056 Deli.  A.R. 728.  Because a large number of the shopping pattern data involves small purchases at other stores close in time to the 056 Deli transactions, this Court does not consider the household shopping patterns as evidence that bolsters FNS's finding of trafficking.

Across five of the six categories of suspicious transactions, the Government has presented ample evidence that Plaintiffs engaged in trafficking.  Accordingly, the burden shifts to Plaintiffs to raise a question of material fact regarding each violation. As stated above, Plaintiffs "bear the burden of showing that 'each cited instance of trafficking' was not validly deemed so." Capellan, 2020 WL 1047907, at *4. Conclusory statements denying the allegations and suggesting alternative explanations for data will not satisfy Plaintiff's burden. Muazeb, 2019 WL 1613433, at *10.  Here, Plaintiffs have not put forth any evidence supporting their explanations for the data to refute FNS's conclusion that Plaintiff trafficked SNAP benefits. See

17

SS Grocery, 340 F.Supp.3d at 184 (Plaintiffs' affidavits failed to present any arguments that sufficiently refute the trafficking charges.). Though this Court does not agree with one of FNS's conclusions, that the shopping patterns of selected households supported the conclusion of trafficking, the overwhelming evidence FNS analyzed was unsuccessfully challenged by Plaintiffs and supports the finding of trafficking. As a result, there is no genuine dispute as to FNS's conclusion that 056 Deli trafficked SNAP benefits.

**B. The Sanction of Permanent Disqualification from SNAP**

**1. Due Process Requirements**

Plaintiffs argue they were denied due process when 056 Deli was permanently disqualified from the SNAP program because the Charge Letter was not delivered to the proper store representatives and therefore, they did not have notice to present evidence to request a CMP within the required ten days. Pl.'s Opp'n at 5. Though Plaintiffs concede that FNS technically complied with its obligations by delivering the Charge Letter to the address designated on the SNAP application, they argue that due process requires "more than mere technical compliance – it requires that notice be reasonably calculated to reach those responsible for responding." Id.

Plaintiffs' due process claim fails for two reasons. First, FNS delivered the Charge Letter to the mailing address provided by Plaintiffs in accordance with the statutory requirements. A.R. 16, 730. By statute, FNS is required to "send the firm a letter of charges before making such determination [about whether to disqualify the firm]." C.F.R. § 278.6(b)(1). By delivering the Charge Letter to the address on file,

18

FNS complied with the statutory requirements for notice. There is no evidence in the record that the Charge Letter was returned as undeliverable or unclaimed. Plaintiffs cite no caselaw on point to support its argument that delivering the Charge Letter to the mailing address 056 Deli chose to provide to FNS constitutes a deprivation of due process. Second, Courts in this District have repeatedly held that "the Court's *de novo* review of the evidence ensures that Plaintiffs' procedural due process rights were not violated." Maflahi v. United States, No. 23 Civ. 2704 (VM), 2024 WL 4350832, at *13 (S.D.N.Y. Sept. 30, 2024); See also Muazeb, 2019 WL 1613433, at *8.

### 2. FNS's Decision to Disqualify 056 Deli from SNAP

SNAP regulations require permanent disqualification if FNS has concluded a firm trafficked in SNAP benefits unless the firm provides certain documentary evidence within ten days of receipt of the Charge Letter. 7 C.F.R. § 278.6(b)(2)(ii). A store may be eligible for a CMP in lieu of permanent disqualification "if the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program." 7 C.F.R. § 278.6(i). FNS's Final Agency Decision informed 056 Deli that it was ineligible for a CMP in lieu of permanent disqualification because it had failed to timely submit the required supporting documentation. A.R. 939.

Though Plaintiffs argue they were deprived of proper notice because they did not receive the Charge Letter, that argument is unpersuasive because notice was sent to the address provided by 056 Deli. In denying Plaintiffs' request for a CMP, FNS imposed the penalty of permanent disqualification "in accordance with the settled

19

policy of the FNS," outlined in 7 C.F.R. § 278.6.  Therefore, because this Court is required to give the agency substantial deference and FNS acted in accordance with settled policy, the permanent disqualification was not arbitrary and capricious. See Arias, 2014 WL 5004409, at * 11 ("Under the arbitrary and capricious standard, the court is not empowered to substitute its judgment for that of the agency.") (internal citations and quotation marks omitted).

Plaintiffs argue that the declarations submitted raise triable issues of fact that preclude summary judgment. Pl.'s Opp'n at 7.  However, even if Plaintiffs had timely submitted the four declarations submitted to the Court as exhibits to their motion to FNS, denial of the CMP would still be consistent with policy set forth in the regulatory statute.   In order to demonstrate by substantial evidence that a firm developed and implemented a training policy, the firm must establish by substantial evidence each of the following four criteria:

> (1) The firm shall have developed an effective compliance policy as specified in § 278.6(i)(1); and (2) the firm shall establish that both its compliance policy and program were in operation at the location where the violation(s) occurred prior to the occurrence of violations cited in the Charge Letter sent to the firm; and (3) the firm had developed and instituted an effective personnel training program as specified in § 278.6(i)(2); and (4) firm ownership was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations…

7 C.F.R. § 278.6(i).

Plaintiff submitted four affidavits as evidence to demonstrate 056 Deli implemented a training policy prior to the trafficking violations. Pl.'s Opp'n, Ex. A-D. Yomary Pichardo Mejia, in her declaration, attests that she is the store manager and

she attended formal training on SNAP compliance on March 29, 2022. Id. at Ex. A. After attending the training Yomary Pichardo Mejia trained her son Jordy Pichardo and sister Sandra Mejia Pichardo by "review[ing] SNAP rules with them, warn[ing] against any improper handling of EBT transactions, and emphasiz[ing] the serious consequences of trafficking violations." Id.  Jordy Pichardo provided a declaration in which he states his mother Yomary Mejia brought back written materials and notes from the training she attended and used them to train him and Sandra Mejia Pichardo. Id. at Ex. B.  Sandra Mejia Pichardo, the owner of 056 Deli, stated while she did not personally attend the SNAP training, her sister Yomary trained her, and she was directly involved in operations and compliance." Id. at Ex. D.  Finally, Frank Marte, President of the Bodega and Small Business Group, filed a declaration stating on March 29, 2022 he organized a formal training seminar on SNAP compliance which Yomary Pichardo Mejia and Sandra Mejia Pichardo attended. Id. at Ex. C.

Relying on 7-Eleven #22360 v. United States, Plaintiffs argue the declarations and information regarding the training program and compliance policy satisfy the regulatory requirements and warrant a CMP. 560 F.Supp.3d 892 (D.Md. 2021) ("A store owner such as [the plaintiff] may thus attempt to show that she qualifies for the alternative sanction via an affidavit, oral testimony, documents, or other forms of evidence as may be appropriate in a given case.") (citing Affum v. United States, 566 F.3d 1150, 1156 (D.C. Cir. 2009)).  However, in 7-Eleven, Plaintiff provided evidence that a training program and compliance policy was implemented *prior* to the trafficking violations in compliance with 7 C.F.R. § 278.6(i).

21

Here, the training program referenced in the four declarations occurred on March 29, 2022, which was after, rather than prior to the violations, which began in February 2022. The declarations are silent as to whether 056 Deli had any training program or compliance policy prior to the start of the review period of February 2022. Because the data that serves as the basis for the trafficking violations occurred prior to the evidence of the training program provided by Plaintiffs, the new evidence submitted by Plaintiffs does not create a triable issue of fact.  Additionally, while the 7-Eleven case cited by Plaintiffs provides support for their argument that the declarations would satisfy the regulatory requirements to obtain a CMP, Courts in this District have found that FNS properly denied a CMP when store owners submit affidavits without "written and dated statements of store policy, dated training curricula or records of training session, employment records, or contemporaneous documentation regarding employee training." See e.g. La Reyna De Westchester Deli Corp. v. United States Dep't. of Agric., No. 22 Civ. 1242 (KHP), 671 F.Supp.3d 476, 488 (S.D.N.Y. May 4, 2023).

## C. The Request for Additional Discovery

Plaintiffs argue that additional discovery and trial are necessary on the issues of "what training took place, how it was conducted, and whether it was sufficient" to demonstrate that 056 Deli did satisfy the requirements to qualify for a CMP outlined in the regulations.  But, as stated in this Order *supra* (IV), summary judgment is appropriate where there is no dispute as to any material fact regarding the trafficking conclusion and the sanction was not arbitrary and capricious.  Additionally, this

Court previously ruled on issues of discovery and allowed Plaintiffs to pursue limited discovery, which Plaintiffs did not follow through with. Dkt. Nos. 48-49; ("Plaintiffs recently informed the Government that they did not subpoena New York State for that data and they do not intend to seek any additional discovery beyond the administrative record."). After Plaintiffs decided not to seek the discovery this Court allowed, they agreed to proceed to summary judgement, Dkt. No. 49, and "cannot now be heard to complain about insufficient discovery." Brothers Grocery & Deli Corp., 2021 WL 4443723, at *7 (internal citations omitted). Accordingly, the request for additional discovery is denied.

## V.    CONCLUSION

For the foregoing reasons and based on the Court's *de novo* review of the record, summary judgment is **GRANTED** in favor of Defendants and Plaintiffs' claims are **DISMISSED**.

SO ORDERED.

DATED:    New York, New York
          March 23, 2026

_____
JENNIFER E. WILLIS
United States Magistrate Judge

23